OPINION
{¶ 1} Appellants, Slink Taylor LLC, and Michael and Sandra Scranton ("the Scrantons"), appeal the judgment of the Portage County Court of Common Pleas granting appellee, National City Bank ("NCB"), summary judgment.
 {¶ 2} On or about March 3, 1999, the Scrantons executed a note providing a line of credit from NCB amounting to $50,000. This line of credit was secured by a mortgage on property located in Euclid, Ohio. The Scrantons failed to make timely payment as required under the note.
 {¶ 3} On or about April 5, 1999, Slink Taylor, a company created by the Scrantons, executed an installment note and security agreement to obtain a loan from NCB for $476,000. The purpose of the loan was to purchase a car wash business. This note was secured by the business' equipment and real property. Michael Scranton was a guarantor of this obligation. Slink Taylor failed to make timely payment as required.
 {¶ 4} On or about April 6, 1999, the Scrantons executed a promissory note and security agreement with the Bank amounting to $324,500. This note was secured by two residential properties (or, alternatively, judgment liens on two residential properties). The Scrantons failed to make timely payment as required under the note.
 {¶ 5} On June 26, 2000 NCB obtained a cognovit judgment in Case No. 2000 CV 00512 in the Portage County Court of Common Pleas. That action was based upon the April 5, 1999, loan agreement between NCB and Slink Taylor for the principal amount of $476,000. On the same day, NCB obtained a second cognovit judgment against Michael and Sandra Scranton, in the principal amount of $50,000 under Case No. 2000 CV 00534. On July 17, 2000, NCB initiated Case No. 2000 CV 00603 against appellants seeking judgment on the April 6, 1999, promissory note in the amount of $358,358.94 in principal and interest.
 {¶ 6} In response, the Scrantons filed counterclaims against NCB for breach of contract, breach of good faith and fair dealing, promissory estoppel, fraudulent inducement and concealment, and negligence.
 {¶ 7} On July 21, 2000, appellants filed a separate action against NCB stating claims for breach of contract, breach of good faith and fair dealing, promissory estoppel, fraudulent inducement and concealment, and negligence, based upon the same allegations set forth in the Scrantons' counterclaims against NCB.
 {¶ 8} In their claims and counterclaims, appellants essentially alleged that they were misled by an agent for NCB who orally promised a $200,000 line of credit as part of the loan arrangement for their purchase of a car wash business and accompanying properties. Apparently, appellants desired to add a deli business to the car wash and needed the line of credit to do so. However, appellants contended that after they signed the loan agreements, NCB's loan agent stated that she was unable to secure the $200,000 line of credit. NCB claimed that the line of credit was withdrawn because the original value of the property ($800,000) was based upon a prior appraisal. After reappraisal, the value was listed at $550,000. As such, the most recent appraisal did not support the additional $200,000 line of credit.
 {¶ 9} On July 20, 2000, appellants filed a Civ.R. 60(B) motion seeking relief from the cognovit judgments based upon, inter alia, fraudulent inducement. On October 26, 2000, the cognovit judgment entered in 2000 CV 00512 was vacated. On December 6, 2000, the trial court consolidated all four actions under Case No. 2000 CV 00512. On March 28, 2002, the trial court granted NCB's motion for summary judgment on its claims in all consolidated cases as well as on appellants' affirmative defenses. On April 15, 2002, appellants voluntarily dismissed their remaining claims and commenced the current timely appeal on May 10, 2002.
 {¶ 10} Appellants now raise the following assignments of error:
 {¶ 11} "[1.] The trial court erred to the prejudice of the defendants when[,] on plaintiff's motion for summary judgment, it overturned its prior ruling granting relief to the defendants from cognovit judgment under Ohio Civ.R. 60(B).
 {¶ 12} "[2.] The trial court erred to the prejudice of the defendants when[,] on the plaintiffs' motion for summary judgment[,] it granted judgment against the defendants on a consumer note for $358,358.94 plus interest.
 {¶ 13} "[3.] The trial court erred to the prejudice of defendants when on the plaintiff's motion for summary judgment, it dismissed the defendants' counterclaim of negligence against the plaintiff."
 {¶ 14} An appellate court reviews a decision granting summary judgment on a de novo basis. See Grafton v. Ohio Edison Co., (1996),77 Ohio St.3d 102, 105. Pursuant to Civ.R. 56(A) and (B), either party to a lawsuit can move for summary judgment; however, summary judgment is properly granted when: there is no genuine issue of material fact; the moving party is entitled to judgment as a matter of law; and reasonable minds can come to but one conclusion, and that conclusion is adverse to the party against whom the motion was made, that party being entitled to have the evidence construed most strongly in his favor. Civ.R. 56(C);Harless v. Willis Day Warehousing Co. (1978), 54 Ohio St.2d 64, 66.
 {¶ 15} Appellants initially argue that the trial court erred when it granted NCB's motion for summary judgment subsequent to granting its Civ.R. 60(B) motion. Appellants maintain that a trial court may not grant summary judgment on an issue against a party who has been previously granted relief from a cognovit judgment on the same issue. We disagree.
 {¶ 16} A party may seek relief from a cognovit judgment pursuant to Civ.R. 60(B) based upon fraud. Sadi v. Alkhatib (Aug. 28, 2001), 10th
Dist. No. 01AP-125, 2001 Ohio App. LEXIS 3812, at 7. To do so, a party must show operative facts which, if proven, would give rise to a meritorious defense and support the alleged grounds upon which it seeks relief. Society Natl. Bank v. Val Halla Athletic Club Rec. Ctr.,Inc., (1989), 63 Ohio App.3d 413, 418. From the language of the rule, it is apparent that the moving party need not set forth facts sufficient to prove its defense or claim. Thus, a party who has been granted relief from judgment may still have summary judgment granted against him where he fails to demonstrate evidence sufficient to create a genuine issue of material fact.
 {¶ 17} Mechanically, a party seeking summary judgment on the ground that the nonmoving party cannot prove its case bears the initial burden of informing the trial court of the basis for the motion and identifying those portions of the record that demonstrate the absence of any genuine issue of material fact on the essential elements of the nonmoving party's claims. Dresher v. Burt (1996), 75 Ohio St.3d 280, 293. If the moving party fails to satisfy this initial burden, summary judgment should be denied. Id. However:
 {¶ 18} "[w]hen a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the party's pleadings, but the party's response * * * must set forth specific facts showing that there is a genuine issue for trial. If the party does not so respond, summary judgment, if appropriate, shall be entered against the party." Civ. R. 56(E).
 {¶ 19} From this, we can infer that even where a party is granted relief from judgment pursuant to Civ.R. 60(B), she may still fall prey to summary judgment if she fails to meet her reciprocal burden of demonstrating the existence of material issues of fact. For instance, if the movant to a summary judgment shows that, even in light of the purported facts supporting the Civ.R. 60(B) motion, there is still no genuine issue of material fact, summary judgment is appropriate. Thus, an order relieving a party from a cognovit judgment does not relieve that party of its burden of stating a legally cognizable claim. Therefore, the trial court's decision to award NCB summary judgment was not inconsistent with its prior ruling on appellant's motion for relief from cognovit judgment. To be sure, the court's ruling on appellants' Civ.R. 60(B) motion did not contemplate whether appellants would ultimately be able to present evidence sufficient to prove the allegations on any of their claims.
 {¶ 20} Appellants further takes issue with the fact that NCB failed to offer affirmative evidence, pursuant to Civ.R. 56, in support of its motion for summary judgment. However, where a motion for summary judgment is predicated on the plaintiff's failure to offer evidence in support of an essential element of his claim, "there is no requirement in Civ.R. 56 that the moving party support its motion for summary judgment with any affirmative evidence." Drescher, supra, at 292. A party opposing a motion for summary judgment must offer admissible evidence creating a genuine issue of material fact. State ex rel. Martinelli v. Corrigan (1991),71 Ohio App.3d 243, 248. As such, in order to withstand NCB's motion for summary judgment, appellants were required to offer evidence sufficient to create a genuine issue of material fact. Contrary to appellants' construction, an order relieving a party from a cognovit judgment does not immunize that party from a later motion for summary judgment or relieve that party from asserting a legally cognizable claim. As such, appellants' first assignment of error is without merit.
 {¶ 21} Although the trial court granted summary judgment on each of the three loan agreements set forth in the facts, appellants' second assignment of error takes issue only with the court's award of summary judgment with respect to the April 6, 1999, loan, the $324,500 borrowed in view of purchasing judgment liens on two residential properties. Specifically, the trial court granted NCB summary judgment in the amount of $358,358.94 in principal and interest on the April 6, 1999, note. However, appellants maintain that material issues of fact remain with respect to their allegations of fraud and/or fraudulent inducement. Insofar as we find no material issues of fact with respect to appellants' allegations of fraud or fraud in the inducement, we disagree.
 {¶ 22} Appellants maintain that they were fraudulently induced to sign the $324,500 loan agreement and that NCB's agent fraudulently misrepresented the value of the properties appellants purchased. As evidence, appellants claim that NCB's agent, "told the Scrantons to buy the judgment liens from FNB, and she would personally move the prior owners in the street within three days." Appellants contend that they relied upon this representation and entered into the loan agreements including the consumer note for $324,500. Appellants further argue that NCB's agent fraudulently induced them into entering the various loan agreements by promising them a $200,000 future line of credit if they completed the transaction.
 {¶ 23} In order to set forth a claim of fraud, a party must set forth sufficient facts demonstrating (1) a representation of fact, (2) which is material to the transaction at hand, (3) made falsely, with knowledge of its falsity, or with utter disregard and recklessness, as to whether it is true or false, (4) with the intent of misleading another into relying upon it, (5) justifiable reliance upon the representation, (6) and a resulting injury proximately caused by the reliance. Able/S.S.Inc., v. KM E Services, Inc., 11th Dist. No. 2000-L-162, 2002-Ohio-6470, ¶ 109, at 39, citing Burr v. Bd of Cty Commrs. OfStark Cty. (1986), 23 Ohio St.3d 69, paragraph two of syllabus. These elements are conjunctive and therefore each must be affirmatively demonstrated for a court to sustain the claim.
 {¶ 24} With respect to fraud, appellants fail to set forth any evidence that NCB's statement regarding the value of the property was an intentional misstatement. In fact, Michael Scranton admitted in his deposition testimony that he had no reason to believe NCB's agent was not acting in good faith in relying on a sheriff's appraisal when she stated the car wash property was worth $800,000.
 {¶ 25} Moreover, any reliance appellants' placed upon NCB's agent's representations was unreasonable. Specifically, appellants were not reasonably justified in relying on NCB's agent's representation that she would remove the prior owners of the property if they failed to remove themselves. Appellants also unreasonably relied on their belief that the $200,000 line of credit was part of their overall loan structure when they signed agreement(s) which made no reference to said line of credit. Under the circumstances, appellants had operated a business in the past and had some experience dealing with commercial lenders. As such, when no evidence of the line of credit appeared in the loan agreement(s), they were on notice that the line of credit was not part of the transaction. In sum, the purported evidence of fraud that appellants allege fails to set forth a cohesive claim for fraud.
 {¶ 26} The burden of affirmatively demonstrating error on appeal rests with the party asserting error. Concord Twp Trustees v. HazelwoodBuilders, Inc. (Mar. 23, 2001), 11th Dist. No. 2000-L-040, 2001 Ohio App. LEXIS 1383, @ 6. Even if an argument exists to support appellants' claim, the court has neither the legal nor the ethical obligation to assert it for them. Because appellant failed to affirmatively demonstrate a genuine issue of material fact with respect to each element of a claim for fraud, appellants' allegations of fraud must fail.
 {¶ 27} Alternatively, "a claim of fraud in the inducement arises when a party is induced to enter into an agreement through fraud or misrepresentation." Lou Carbone Plumbing, Inc. v. Domestic Linen Supply Laundry Co., 11th Dist. No. 2002-T-0026, 2002-Ohio-7169, at ¶ 10, citing ABM Farms v. Woods (1998), 81 Ohio St.3d 498, 502. To establish fraud in the inducement, "a plaintiff must prove that the defendant made a knowing, material misrepresentation with the intent of inducing the plaintiff's reliance, and the plaintiff relied upon the misrepresentation to her detriment." Id. Insofar as fraud in the inducement requires proof of virtually the same elements as those of fraud, appellants' claim on this issue must fail for substantially the same reasons as their fraud claim: There is no evidence that NCB's agent made a knowing misrepresentation with the intent of inducing appellants' reliance.
 {¶ 28} Moreover, although a claim for fraud in the inducement does not explicitly require "reasonable" reliance, the claim is fundamentally grounded upon a claim of fraud. Insofar as a claim of fraud requires reasonable reliance, we construe the reliance necessary for a fraudulent inducement claim to tacitly require the same. As indicated above, appellants' reliance was unreasonable. Hence, there is no genuine issue of material fact regarding fraud in the inducement therefore, appellants argument must fail.
 {¶ 29} Thus, for the foregoing reasons, we find no genuine issue of material fact with respect to appellants' claims of fraud and fraud in the inducement. As such, appellants have failed to carry their burden and consequently their second assignment of error is without merit.
 {¶ 30} In their third assignment of error, appellants contend that the lower court erred when it dismissed their counterclaim for negligence against NCB. In support, appellants maintain that they had a fiduciary relationship with NCB. Consequently, NCB owed appellants a legal duty of care which it breached when it improperly processed their loan.
 {¶ 31} In particular, appellants note that a fiduciary relationship may arise via a formal appointment or it may be implied through an informal relationship. The latter, de facto fiduciary relationship, will arise only if both parties understand that a special trust or confidence has been reposed in the other. Umbaugh Pole Building Co., Inc. v. Scott
(1979), 58 Ohio St.2d 282, paragraph one of the syllabus. In the current case, appellants maintain that a de facto fiduciary relationship existed between themselves and NCB from the moment that NCB's agent took it upon herself to work the deal(s) under consideration. To wit, appellants allege NCB's agent advised them to "drop their attorney" and undertook to handle the transaction entirely on her own. Further, appellants note that NCB's agent gave them advice on the nature of judgment liens that she purchased on appellants' behalf and, as a result, she accepted her role as appellants' agent. Under these circumstances, we agree.
 {¶ 32} In the instant matter, even if NCB's agent handled the series of transactions on her own, we cannot conclude, without more, that this transformed the debtor/creditor relationship into a fiduciary relationship. After all, shepparding a client through the borrowing process is a basic function of a loan officer. Therefore, NCB's agent's statement indicating that she would handle appellants' transaction on her own does not create a de facto fiduciary relationship.
 {¶ 33} However, when NCB's agent instructed appellants to "drop their attorney," one could reasonably infer that a fiduciary relationship was forged. That is, there is a genuine issue of material fact as to whether NCB's agent's advice to "drop their attorney" reposed a special trust and confidence in the creditor/debtor relationship such that a fiduciary duty was created. When a creditor categorically asserts that a debtor drop his or her legal representation, one may reasonably believe that the creditor has undertaken an obligation to protect the debtor's interests within the limited scope of the borrowing process. Therefore, summary judgment was improperly entered by the trial court in NCB's favor on appellants' claim of negligence.
 {¶ 34} For the foregoing reasons, appellants' first and second assignments of error are overruled while their third assignment of error is sustained. Thus, the judgment of the trial court is affirmed in part; reversed in part, and the matter is remanded to the trial court for further proceedings consistent with this opinion.
Robert A. Nader, J., concurs.
William M. O'Neill, J., dissents with a dissenting opinion.
Robert A. Nader, J., retired, of the Eleventh Appellate District, sitting by assignment,